IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs May 3, 2005

## STATE OF TENNESSEE v. MALCOLM C. WHITESIDE

**Appeal from the Circuit Court for Madison County**
**Nos. 94-724, -1084, 95–78, -79, -160, -256    Roy B. Morgan, Jr., Judge**

---

**No. W2004-01894-CCA-R3-CD  - Filed August 18, 2005**

---

The defendant, Malcolm Whiteside, entered pleas of guilty to forgery, assault, resisting arrest, aggravated burglary, two counts of evading arrest, and four counts of theft under $500. The trial court imposed an effective sentence of seven years to be served in the community corrections program. A violation warrant was filed less than one month after the defendant was placed on community corrections. A second violation warrant was filed three years later. At a hearing held six years after the filing of the second warrant, the trial court revoked the community corrections sentence and ordered service of the balance of the sentence in the Department of Correction. In this appeal, the defendant asserts that the trial court erred by revoking community corrections and ordering service of the sentence. The judgment of the trial court is affirmed.

**Tenn. R. App. P. 3; Judgment of the Trial Court Affirmed**

GARY R. WADE, P.J., delivered the opinion of the court, in which DAVID H. WELLES and JOHN EVERETT WILLIAMS, JJ., joined.

George Morton Googe, District Public Defender (on appeal) and Stephen P. Spracher, Assistant District Public Defender (at trial), for the appellant, Malcolm C. Whiteside.

Paul G. Summers, Attorney General & Reporter; Seth P. Kestner, Assistant Attorney General; and Jody Pickens, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

On March 15, 1995, the defendant entered pleas of guilty to the following offenses:

| Case Number | Offense | Sentence |
|---|---|---|
| 94-724 | theft under $500 | 11 months, 29 days |
| 94-724 | forgery | 2 years |
| 94-724 | forgery | 2 years |
| 94-1084 | assault | 11 months, 29 days |

| 94-1084 | resisting arrest | 6 months |
| 94-1084 | evading arrest | 11 months, 29 days |
| 95-78 | theft under $500 | 11 months, 29 days |
| 95-78 | aggravated burglary | 3 years |
| 95-79 | evading arrest | 11 months, 29 days |
| 95-160 | theft under $500 | 11 months, 29 days |

Pursuant to a plea agreement, the trial court ordered that the sentences for the forgery convictions be served consecutively to one another and to the sentence for the aggravated burglary conviction. The remaining sentences were ordered to be served concurrently for an effective sentence of seven years. Also by agreement, the defendant was placed on community corrections.

Less than one month later, on April 10, 1995, a community corrections violation warrant was filed wherein it was alleged that the defendant had violated the terms of his release by changing his residence without notifying his supervisor and by failing to report as required. In a second violation warrant filed three years later, it was alleged that the defendant had violated the terms of his release by failing to report, by failing to pay fines and costs, and by absconding from the jurisdiction. In 2004, after the defendant was found in another jurisdiction, the trial court conducted a hearing to determine whether the defendant had violated the terms of his community corrections sentence.

Community corrections supervisor Vicky Parrish testified that the defendant had reported to his supervisor for the first time one week after entering his guilty pleas but never reported again. Ms. Parrish stated that a number of supervisors had tried to locate the defendant over the years with no success. According to Ms. Parrish, an entry in the defendant's file indicated that his grandmother reported that she had not seen the defendant in at least three years and that he had left Madison County. Ms. Parrish, who took over the case in 2004, eventually discovered that the defendant was incarcerated in Lake County, Illinois.

The defendant testified that shortly after he was placed on community corrections, he was contacted by an assistant district attorney who asked him to provide information regarding the shooting of a police officer. He claimed that he provided "all the information [he] knew" and, two days after being released from jail, was confronted by the shooting suspect's brother. The defendant asserted that an Officer Caldwell had advised him to "lay low," explaining that he would "take care of it." The defendant contended that he was not aware of the violation warrants and thought it was okay to leave the jurisdiction. He explained that he left because he was afraid for his life and the lives of his wife and young daughter. The defendant testified that when he discovered that the warrants were pending, he turned himself in to the authorities. He agreed to pay the outstanding fines and costs and sought probation for the balance of his sentence.

At the conclusion of the hearing, the trial court revoked the defendant's community corrections sentence. The defendant was ordered to serve the balance of his sentence in the Department of Correction:

[T]he [c]ourt does find that it has been established by a preponderance of the evidence that this [d]efendant did move without notifying Community Corrections as is required.

The [c]ourt further finds that he failed to keep his contacts with Community Corrections and report as required. That's been well established by his own admission, that he's move to Illinois where he's lived off and on over the years has been established by his own admission when he testified. So I find that he failed to, in both of these warrants, comply with his visits, whether they be weekly or every two weeks or twice a week. He failed to comply.

He failed to pay fines and costs or fines and fees as required, but I'm not holding that against him at all. Even though he admitted it, I do not give any weight to that for making decision today.

As far as the allegation that he's an absconder, he absconded from the jurisdiction of the [c]ourt. The [c]ourt's already made a finding that he left the jurisdiction and failed to keep his required meetings of probation officer. This went on for many, many years, and I think that's sufficient alone to make that finding, without even reference to absconding. . . .

In this appeal, the defendant contends that the trial court abused its discretion by revoking his community corrections sentence and ordering service of the sentence. The state submits that the trial court did not err.

Once a defendant violates the terms of his community corrections program, the trial court may revoke the sentence and impose a new one:

The court shall also possess the power to revoke the sentence imposed at any time due to the conduct of the defendant or the termination or modification of the program to which the defendant has been sentenced, and the court may resentence the defendant to any appropriate sentencing alternative, including incarceration, for any period of time up to the maximum sentence provided for the offense committed, less any time actually served in the community-based alternative to incarceration.

Tenn. Code Ann. § 40-36-106(e)(4).

In State v. Harkins, 811 S.W.2d 79 (Tenn. 1991), our supreme court ruled that a community corrections sentence is so similar to a probationary sentence as to require the application of the same standard of review. Our general law provides that a trial court may revoke a sentence of probation upon finding by a preponderance of the evidence that the defendant has violated the conditions of his release. Tenn. Code Ann. § 40-35-311(e) (Supp. 2001); Stamps v. State, 614 S.W.2d 71, 73 (Tenn. Crim. App. 1980). On appeal, a revocation will be upheld absent an abuse of discretion. In order to establish that the trial court has abused its discretion, the defendant must show that there is no substantial evidence to support the determination that he violated his probation. Harkins, 811 S.W.2d at 82 (citing State v. Grear, 568 S.W.2d 285, 286 (Tenn. 1978)); State v. Delp, 614 S.W.2d 395, 398 (Tenn. Crim. App. 1980). Relief can be granted only when "'the trial court's logic and reasoning were improper when viewed in the light of the factual circumstances and the legal

principles involved.'" <u>State v. Shaffer</u>, 45 S.W.3d 553, 555 (Tenn. 2001) (quoting <u>State v. Moore</u>, 6 S.W.3d 235, 242 (Tenn. 1999)).

In this instance, the defendant has been unable to establish that the trial judge did not exercise a conscientious and intelligent judgment. <u>See</u> <u>State v. Gregory</u>, 946 S.W.2d 829, 832 (Tenn. Crim. App. 1997). The record establishes that the defendant reported to his community corrections supervisor only once. He made no effort to pay the fines and costs as required under the terms of his release. He left the jurisdiction without alerting community corrections officials and remained at large for more than six years. While he admitted that he had violated the terms of his release, the defendant claimed that he had done so because a police officer had told him it was "taken care of." He offered no proof, however, to support this contention. Under these circumstances, it is our view that the trial court did not err by revoking the community corrections sentence and ordering the defendant to serve the sentence in the Department of Correction.

Accordingly, the judgment of the trial court is affirmed.

_____
GARY R. WADE, PRESIDING JUDGE